[Cite as *State v. Costello*, 2017-Ohio-294.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 104456

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## PAUL M. COSTELLO

DEFENDANT-APPELLANT

### JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-15-599718-A and CR-15-600737-B

**BEFORE:** Boyle, J., E.A. Gallagher, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** January 26, 2017

**ATTORNEY FOR APPELLANT**

James E. Valentine
P.O. Box 21266
South Euclid, Ohio   44121


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Anna Woods
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1} Defendant-appellant, Paul Costello, appeals his sentence. He raises one assignment of error for our review, arguing that "[t]he trial court erred in imposing a maximum sentence." Finding no merit to his appeal, we affirm.

## I. Procedural History

{¶2} In November 2015, Costello and a codefendant were indicted on 93 counts in Cuyahoga C.P. No. CR-15-599718-A, and three counts in Cuyahoga C.P. No. CR-15-600737-B. In March 2016, Costello pleaded guilty to an amended indictment in both cases as part of a "packaged plea deal."

{¶3} In Case No. CR-15-599718-A, Costello pleaded guilty to eight counts of tampering with records in violation of R.C. 2913.42(A)(1) and (2), third-degree felonies, one count of grand theft in violation of R.C. 2913.02(A)(3), a fourth-degree felony, three counts of aggravated theft in violation of R.C. 2913.02(A)(3), fifth-degree felonies, three counts of petty theft in violation of R.C. 2913.02(A)(3), first-degree misdemeanors, and six counts of "title offenses" in violation of R.C. 4505.19(A)(4), which were unclassified felonies.[1] The remaining counts were nolled.

{¶4} In Case No. CR-15-600737-B, Costello pleaded guilty to one count of receiving stolen property in violation of R.C. 2913.51(A), a fourth-degree felony, and one

[1]R.C. 4505.19(A)(4) provides that no person shall "[k]nowingly obtain goods, services, credit, or money by means of an invalid, fictitious, forged, counterfeit, stolen, or unlawfully obtained original or duplicate certificate of title, registration, bill of sale, or other instrument of ownership of a motor vehicle[.]"

count of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B), a third-degree felony.

{¶5} The trial court held a sentencing hearing on both cases, sentencing Costello to an aggregate of 60 months in prison. In Case No. CR-15-599718-A, the trial court imposed a total sentence of 12 months in prison; 12 months each for tampering with evidence, 5 months for grand theft, 12 months each for the title offenses, 11 months each for theft, and time served on the petty theft offenses, all to be served concurrent to each other but consecutive to the sentence imposed in Case No. CR-15-600737-B. The trial court further ordered that Costello pay $3,600 in restitution to two victims, for a total of $7,200.

{¶6} In Case No. CR-15-600737-B, the trial court sentenced Costello to 12 months for receiving stolen property and 36 months for failure to comply with an order or signal of a police officer, to be served consecutive to each other, for a total sentence of 48 months in prison. The trial court further ordered that the sentence be served consecutive to the sentence imposed in Case No. CR-15-599718-A, for an aggregate sentence of 60 months in prison. The court also ordered Costello to pay the $1,174 to the city of Westlake, added six points to his driver's license, and suspended his driver's licence for 30 years, until April 8, 2046.

{¶7} Costello appeals from the judgments in both cases.

## II. Standard of Review

{¶8} In reviewing felony sentences under R.C. 2953.08(G)(2), this court must

"review the record, including the findings underlying the sentence or modification given by the sentencing court." In doing so, if we clearly and convincingly find "[t]hat the record does not support the sentencing court's findings" under R.C. 2929.13(B) (limits on prison for certain F-4s and F-5s) or (D) (prison for F-1 and F-2 drug offenses), R.C. 2929.14(B)(2)(e) (repeat violent offender) or (C)(4) (consecutive sentences), or R.C. 2929.20(I) (judicial release), or that the sentence is otherwise contrary to law, we may "increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing." R.C. 2953.08(G)(2).

{¶9} The Ohio Supreme Court has further explained:

> We note that some sentences do not require the findings that R.C. 2953.08(G) specifically addresses. Nevertheless, it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.

*State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23.

### III.  Maximum Sentence

{¶10} In his sole assignment of error, Costello argues that maximum sentence that the trial court imposed for failure to comply is not supported by the record pursuant to R.C. 2921.331. We disagree.

{¶11} Costello pleaded guilty to a third-degree failure to comply under R.C. 2921.331(B). This provision states that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a

police officer to bring the person's motor vehicle to a stop." A violation of R.C. 2921.331(B) rises to the level of a third-degree felony if a jury or judge finds proof beyond a reasonable doubt that either:

> (i) The operation of the motor vehicle by the offender was a proximate cause of serious physical harm to persons or property.
>
> (ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

R.C. 2921.331(C)(5)(a)(i)-(ii). In this case, Costello pleaded guilty to a third-degree failure to comply. Because there is no evidence that he caused serious physical harm to any person or property, Costello admitted that by fleeing police, he caused a substantial risk of serious physical harm to people or property.

{¶12} Further, R.C. 2921.331(C)(5)(b) sets forth additional factors a trial court must consider when sentencing an offender for failure to comply *if* a police officer pursued the offender when the offender failed to comply *and* R.C. 2921.331(C)(5)(a) applies (i.e., the offender caused a substantial risk of serious physical harm to people or property). Under this provision, trial courts must not only consider the factors set forth in sections 2929.12 and 2929.13 of the Revised Code when determining the seriousness of an offender's conduct in committing failure to comply, they must also consider additional factors set forth in R.C. 2921.331(C)(5)(b) to determine the seriousness of the offender's conduct.

{¶13} We note that both of the circumstances in R.C. 2921.331(C)(5)(b) are present in this case. Thus, the trial court was required to consider the following factors

when determining what sentence to impose on Costello's failure to comply offense:

> (i)　The duration of the pursuit;
>
> (ii)　The distance of the pursuit;
>
> (iii)　The rate of speed at which the offender operated the motor vehicle during the pursuit;
>
> (iv)　Whether the offender failed to stop for traffic lights or stop signs during the pursuit;
>
> (v)　The number of traffic lights or stop signs for which the offender failed to stop during the pursuit;
>
> (vi)　Whether the offender operated the motor vehicle during the pursuit without lighted lights during a time when lighted lights are required;
>
> (vii)　Whether the offender committed a moving violation during the pursuit;
>
> (viii)　The number of moving violations the offender committed during the pursuit;
>
> (ix)　Any other relevant factors indicating that the offender's conduct is more serious than conduct normally constituting the offense.

R.C. 2921.331(C)(5)(b)(i)-(ix).

**{¶14}** R.C. 2921.331(D) further provides that "[i]f an offender is sentenced pursuant to division (C)(4) or (5) of this section for a violation of division (B) of this section, and if the offender is sentenced to a prison term for that violation, the offender shall serve the prison term consecutively to any other prison term or mandatory prison term imposed upon the offender." And R.C. 2921.331(E) states that "[i]n addition to any other sanction imposed for a felony violation of division (B) of this section, the court shall impose a class two suspension from the range specified in division (A)(2) of section

4510.02 of the Revised Code." Under R.C. 4510.02(A):

> When a court elects or is required to suspend the driver's license, commercial driver's license, temporary instruction permit, probationary license, or nonresident operating privilege of any offender from a specified suspension class, for each of the following suspension classes, the court shall impose a definite period of suspension from the range specified for the suspension class:
>
> * * *
>
> (2)   For a class two suspension, a definite period of three years to life[.]

{¶15} According to the presentence investigation report regarding Costello's failure to comply conviction, police officers approached Costello and a woman in a Super 8 motel parking lot on October 31, 2015. The officers believed that Costello was assaulting the woman. The officers exited their cars and approached Costello's vehicle. Costello "pulled away" and "accelerated at a high rate of speed." Costello eventually entered I-90 west, but was driving the wrong way, "against traffic at a high rate of speed." Costello "nearly struck a police vehicle that had entered the highway in the correct direction." Costello then exited the highway "by driving the wrong way up the I-90 ramp from Detroit Road into Rocky River." Costello and the woman eventually stopped at an intersection and fled on foot. They were caught by police and arrested. The vehicle that Costello was driving had been reported stolen from Enterprise Rental Car on October 9, 2015.

{¶16} At Costello's sentencing hearing, Officer Steve Krebs testified regarding Costello's failure to comply. He stated that the offense occurred approximately 5:30 p.m. on Halloween night, which was approximately 30 minutes before trick-or-treat

began. Officer Krebs indicated that Costello was traveling the wrong way at "high speeds" down "one of [Westlake's] busier streets," into Rocky River. Officer Krebs further stated that Costello was traveling "through residential areas, in both Rocky River and Bay [Village], at very high speeds, recklessly." The state played Officer Krebs's "dash cam" for the court. Officer Krebs stated that he was traveling approximately 80 m.p.h. in a 25 m.p.h. zone when he was pursuing Costello.

{¶17} The state further explained to the court that the police chased Costello for approximately five miles, which lasted about four to four and one-half minutes long. The state also informed the court that during the chase, Costello failed to stop at "at least five different lights or stop signs, ignored police lights and sirens, and that he committed several moving violations, including driving the wrong way on I-90."

{¶18} According to the state, while Costello was in the hospital, he attempted to escape two times. The state also played a portion of Costello's jailhouse calls, which the state claimed established that Costello showed no remorse because he was laughing when he talked about fleeing from police. The state further informed the court that Costello was on probation when he committed the offenses; Costello was in the diversion program with the same judge. The state further told the court that Costello also had a "history of convictions" and "shows a pattern of drug abuse."

{¶19} Costello's counsel informed the court that Costello had an opiate addiction that began when he was "blown up serving our country as a soldier in the Middle East." Costello's counsel further stated that except for the three cases before the court,

Costello's criminal history was negligible. Further, Costello has "some lasting mental health issues from his injuries," some "brain function issues." Costello's counsel disagreed that the jailhouse tape established that Costello was not remorseful. Counsel said that on the jailhouse tapes, Costello was asked, "you ran from the cops. Why?" He responded that he was high. Costello's counsel further stated that Costello pleaded guilty, so he was accepting responsibility. Costello's counsel argued that the failure to comply was not the worst form of the offense because there were not "hoards of pedestrians."

{¶20} Costello told the court that he became addicted to heroin after being injured in Afghanistan. He said that he was shot two times, hit with a shrapnel in his head, had seven broken ribs, and was not able to walk from an IED. He was also diagnosed with PTSD. He started taking pain medication and became addicted. Costello stated that this was the first time he had been sober in four years. He asked the court to send him to a treatment center, rather than to prison.

{¶21} The trial court acknowledged how difficult it is for "veterans returning from service." But the trial court stated that based on the facts of this case, it could not "offer a pass here."

{¶22} The trial court reviewed the recidivism and seriousness factors under R.C. 2929.12. The trial court found that Costello caused "serious economic harm" to the victims in Case No. CR-15-599718-A. The trial court further found that Costello has a "history," stating that he "was on diversion when this took place." The trial court then

stated the following:

The car chase by itself in the 737 case, that militates a prison sentence all by itself.

We have a situation where the defendant not only went at very, very high speeds, but he went the wrong way on Interstate 90. And God knows what could have happened if he had collided with anybody on the interstate going the wrong way at a high rate of speed.

And the Court will take issue with the fact that, you know, there were no trick-or-treaters on the street. This was 5:30 on Halloween. Almost every suburb in Cuyahoga County on Halloween trick-or-treating starts at 6:00 o'clock.

The video will show that this chase took place through residential neighborhoods on relatively narrow streets. And, you know, regardless, there could have been kids out playing in the street or kids walking on the sidewalk.

You know, the chase ended with the car up in somebody's front lawn. The defendant after that still had issues with the officers following that. There is absolutely no excuse whatsoever for that behavior.

This Court is well aware of the heroin problem. And I've spoken to over 21,000 citizens of this county in my forums regarding heroin. And I sort of turn a deaf ear to the arguments in this case, because usually when I have people addicted to heroin they're breaking into cars, breaking into houses, they're scrapping, they're committing property offenses, they're not putting together an extensive scheme like we have here.

Multiple counts to commit title fraud. You know, this is a crime that took a lot of thinking, took a lot of planning, took a lot of action. This is not something typical of somebody addicted to heroin.

So I'm not going to buy that excuse that this was — if he was smashing out car windows, stealing purses, shoplifting, that I would buy. This, no. This was an extensive scheme that he had to defraud these individuals.

And, frankly, I am borderline insulted by the argument that these victims had it coming. Don't — no more, [defense counsel]. I'm not

going to hear anything else.

Frankly, I'm insulted by that argument, that these victims had it coming because they charge high interest rates. They have to in their line of work because of individuals like Mr. Costello they have to deal with.

And so, it is what it is with regard to that. I'm not going to hear any arguments with regard to those things.

And I have reviewed the factors with regard to 2921.331(C)(5) for the failure to [comply], and I adopt as part of my opinion the statements placed on the record by [the state] with regard to the factors there and the defendant's [breach] of those factors.

Everything she said I agree with after reviewing the video, with regard to the rate of speed, the duration, the distance. You know, the fact it was Halloween, it was 5:30, it was a — regardless, it was a Saturday night.

I believe that the behavior in this case — especially considering the wrong way on Interstate 90. The interstate, as you can see from the video, was very crowded, too. It was a high volume of traffic that day. I believe that this does constitute the worst form of the offense based upon that.

{¶23} The trial court then imposed Costello's sentence, stating that it considered all of the factors it was required to consider in sentencing Costello, as well as the fact that the failure-to-comply statute mandates consecutive sentences. And although the trial court stated that it did not have to make consecutive sentence findings because it was mandatory, it made them anyway.

{¶24} In sentencing Costello to 36 months for failure to comply, which is the maximum, the trial court stated that "based upon the factors that I must consider based upon the video that I watched, and based upon the totality of the circumstances here, 36 months, which is the maximum sentence. The Court does believe that this does

constitute the worst form of the offense." The trial court further suspended Costello's driver's license for 30 years pursuant to R.C. 2921.331(E).

{¶25} After reviewing the entire record, we find that the record supports the trial court's maximum sentence of 36 months on the failure-to-comply offense. The duration of the pursuit was almost five minutes, and the distance was nearly five miles. The officer explained that he was traveling at 80 m.p.h., through residential neighborhoods, while pursuing Costello. Costello ran numerous traffic lights and stop signs. Costello committed numerous moving violations during the pursuit, including running many traffic lights and stop signs — with the most serious moving violation being that he traveled the wrong way at high speeds on Interstate 90 and on a busy road in Westlake. Regarding any other factor that indicates the offender's conduct is more serious than conduct normally constituting the offense, the court found that the case occurred on Halloween night, around 5:30 p.m., when children were about to start trick-or-treating.

{¶26} Costello argues that although he could have caused serious damage during the pursuit, he did not. Thus, he claims that his failure to comply was not the worst form of the offense. We disagree. The failure-to-comply statute makes the offense a third-degree felony if either of two conditions are found — that the offender caused serious physical harm to persons or property, or that the offender caused a substantial risk of serious physical harm to persons or property. R.C. 2921.331(C)(5)(a)(i)-(ii). Based on the factors found by the trial court that Costello caused a substantial *risk* of serious physical harm to people or property, we find that the record supports a maximum sentence

of 36 months on the failure-to-comply charge.

**{¶27}** Accordingly, Costello's sole assignment of error is overruled.

**{¶28}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

EILEEN A. GALLAGHER, P.J., and
LARRY A. JONES, SR., J., CONCUR